(Hamilton County Court of Common Pleas.)

WILLIAM NORWOOD *v.* CHAS. L. MILLS, EXECUTOR, ET AL.

1. M. gives by his will a legacy of $50,000.00 to his son in trust for testator's wife, income payable to her for life, with power of appointment by will in her as to the principal ; if not so disposed of, says, "it shall be *equally divided among my children, or their legal representatives,*" and uses no other words in the context of the will to explain his meaning.

*Held,* that as a life estate precedes the legacy to the children, the words *"legal representatives"* (although following the disjunctive *"or"*), are used in their primary sense of *"executors or administrators,"* as words of limitation, and not in their secondary sense of *"next of kin,"* as words of substitution, and therefore such legacy given to any child who died without issue in the lifetime of the testator, lapsed ; that the intent of the testator in the use of these words in his will is not affected by the happening that his wife died thereafter, in his lifetime.

2. M. gives the residue of his estate, real and personal, to his son in trust to hold, as he says, "for the equal benefit of my four children *and their legal representatives,*" and uses no other words in the context of his will to explain his meaning.

*Held,* that the words *"legal representatives"* preceded by the conjunctive *"and,"* are used in their primary sense of *"executors or administrators,"* as words of limitation, and not in the secondary sense of *"next of kin,"* as words of substitution, and therefore such legacy or devise given to any child who died without issue in the life-time of the testator, lapsed.

3. Section 5971, Revised Statutes of Ohio, recognizing such rule of construction, provided that as to the *issue* of any child or other relative no devise (or legacy) should lapse by the death of the legatee during the life of the testator ; *but the husband is not the issue of his deceased wife,* (although he be next of kin, by the statute of descent and distribution.)

(Decided March, 1895.)

BUCHWALTER, J.

The issues herein considered arise in the construction of the last will of Joseph F. Mills, deceased, upon demurrer to plaintiff's petition.    It is alleged in the petition, among other things, that Joseph F. Mills executed his will January 28, 1874.    That he then had living as members of his family his wife, Margaret Sturgis Mills; one son, Charles L. Mills, then married, and three unmarried daughters, viz., Maria Mills, Martha A. Mills and Emma Mills,    The testator never had any other children except two who died in their infancy, and was married but once.

Said wife, Margaret Sturgis Mills, died intestate November 18, 1875. Maria Mills married the plaintiff, William Norwood, October 27, 1880, had issue, but died intestate without leaving issue March 8, 1884, her said husband surviving; all within the knowledge of the testator.

The testator died December 18, 1890, thus having survived his wife and his said daughter Maria Mills Norwood.

Testatator by said will makes certain specific bequests to his wife and son ; devises a life estate in the homestead to his wife ; names his wife and son as executors; specifies their powers in his partnership interest, and then by Items 6 and 7 provides as follows :

" *Sixth.*—I direct my executors to pay to my wife the sum of six thousand dollars per annum, in monthly installments, until our youngest child shall arrive at majority, and this shall be in lieu of the year's allowance of the law.    When my said youngest child shall have reached her majority, I.direct my executors to pay to Charles L. Mills, in trust for my wife, the sum of fifty thousand dollars ($50,000.00), said sum to be held by him, and securely invested in mortgage upon real estate in Hamilton County, Ohio, the interest accruing therefrom to be paid to my wife semi-annually. The principal sum, to-wit, said sum of fifty thousand dollars, may be disposed of by my wife, by last will and testament.    If not so disposed of, it shall be equally divided among my children, *or their legal representatives*, at her decease.

" *Seventh.*—I direct that the rest and residue of my estate, real, personal and mixed, shall pass to, and vest in Charles L. Mills, in trust for the following purposes:    Said trustee shall hold said estate for the equal benefit of my four children and their legal representatives.    He shall have full power to rent, lease or sell any real estate belonging to said estate, and to invest proceeds.    He shall, upon the marriage of any one of my daughters, pay to her, on account of her proportion of said estate, the sum of five thousand dollars, and may, from time to time, make further distributions and payment of said interests, if it shall seem to him judicious to do so. And he shall invest all trust funds which shall come to his hands in mortgage security, or ground rents, and shall pay the income arising therefrom to my said children, in their respective proportions, semi-annually.    The power of said trustee shall not vest until my executors shall have filed a final account, and until that time, the said executors shall have full power to rent, lease or sell, any part of my real estate.    Said trust shall continue during the lives of all my children, unless said trustee shall sooner distribute the entire estate."

The word "representative," and the words "their legal representatives," are not used elsewhere in the will.    The words " executors or administrators" are nowhere else in the will, though the word " executors " is in the appointing clause and in the one giving them certain powers as to his partnership interest; also in Items Six and Seven as herein set out.

It is further alleged in the petition, that the testator left a large estate, both real and personal, and that besides the bequest of fifty thousand dollars in Item Sixth, there was a large residuary estate for distribution under said Item Seventh of the will, which, in part, was directed to be

held by the son, Charles L. Mills, as trustee, and in part had been distributed by him to the surviving children of the testator.

Our inquiry is as to the meaning intended by the testator in the use of the words, (in the Sixth Item, in disposing of the fifty thousand dollars legacy, upon the death of his wife not disposing of the same by her will), "*it shall be equally divided among my children, or their legal representatives, at her decease;*" and by the words, (in the Seventh Item, where he vests the legal title of all the residue of his estate in his son, Charles L. Mills, in trust), "*said trustee shall hold said estate for the equal benefit of my four children, and their legal representatives.*"

If the testator had not bequeathed a preceding life estate, but had given a legacy direct to his children, of said fifty thousand dollars named in Item Sixth, by the same words, to-wit: "It shall be equally divided among my children, or their legal representatives," then by an unquestioned line of authorities, the construction should be (the words "legal representatives" preceded by the disjunctive "or," being words of substitution, and not of limitation), the next of kin; those who may be entitled under our statute of descent and distribution, should take as legatees, instead of the children deceased at the death of the testator; and, in that event, in this case, the plaintiff Norwood, would take beneficially as the legatee substituted for his deceased wife. That is, the children would then have been given an absolute bequest, on condition that they survived their father, the testator; but if any of them died during his lifetime, then his or her next of kin would take as substitute for the primary legatee; the next of kin being those entitled beneficially to represent the deceased, and to take according to the statute of descent and distribution.

See a very clear statement of this principle and rule of construction in *Brokaw* v. *Hudson's Executors*, 27 N. J. Eq. 135. See also: *Huston* v. *Reid, Ex'r*, 31 N. J. Eq. 591; *Gittings* v. *McDermott*, 2 M. & K. 73; *Cotton* v. *Cotton*, 2 Beav. 69; *Bridge* v. *Abbott*, 3 Brown Ch. 224; *Drake* v. *Pells*, 3 Edwards Ch. 270; *Baines* v. *Otte*, 1 M. & K. 465; *Padin* v. *Hills*, 1 M. & K. 470; *Taylor* v. *Connor*, 7 Ind. 115; *Brent* v. *Washington*, 18 Gratt 526.

But before this legacy of fifty thousand dollars could be possessed and enjoyed by the testator's children, he directed that (after the youngest child became of age) all the income and beneficial use thereof be paid to his wife, by the trustee during her life, and gave a vested title to his children surviving him, subject to being divested only by the contingency of his wife executing her power of appointment, by will, in favor of other beneficiaries. Thus it was legally possible that any or all of his said children would become vested by the terms of the will with an equitable title in this bequest, to which they might never come into possession. Equitable estates vest and descend as legal estate. *Bolton* v. *Bank*, 50 Ohio St. 290.

If therefore, the testator's wife and his daughter, Maria Norwood, had survived him as contemplated by this item of his will, (the youngest daughter having become of age), said Maria Norwood, subject to the life income and the power of appointment given to her mother, would have taken a vested equitable title in an undivided part of that bequest, which she could have passed to her beneficiaries by her own will. And had she died thus vested, and her mother yet living, then her legal representatives would have been her executors or administrators. No other person in that contingency would be entitled to take, although it is true they would not take beneficially, but in trust for those entitled to the estate by her will, or by the law of descent and distribution, as the case might be, after the payment of the debts of such child.

It is one of the fundamental rules of construction that technical words shall have their legal effect unless from other words it is very clear the testator meant otherwise. Hawkins on Wills, 4. Or, as stated by Vice Chancellor Kindersley in *Re* Crawford's Trusts, 2 Drew 233:

"There is, however, one rule of construction of universal application, which admits of no exception, and which ought never under any circumstances, to be departed from, viz.: that if any term is used by the testator which has a primary and ordinary legal meaning, that is the sense in which it ought to be construed, unless the court is reasonably satisfied by the evidence to be collected from the will itself, of the testator's intention to use it not in that sense, but in some different sense."

Testator Mills had before him in executing his will a reasonable contingency that his children might survive him and die in the life of his widow vested with title, but with possession postponed till her death. And therefore, when he bequeaths to his children or their legal representatives, without any other words to explain his meaning, our duty is to infer that he used such words in their technical, ordinary, legal and primary sense, to wit: as executors or administrators; and not in a secondary sense, as next of kin according to the statute of descent and distribution; and therefore as words of limitation, and not of substitution. Maria Norwood, his daughter, having died in testator's life-time, (no estate having vested in her) the share of the fifty thousand dollar legacy originally intended for her lapsed.

A testator is never supposed to mean to give to any but those who should survive him, unless a contrary intention is perfectly clear. The leading authority on the construction here given is *Corbyn* v. *French*, 4 Versey, 418–434.

Where testator bequeathed the residue of his estate to his widow for her life, and at her death two thousand pounds to Elizabeth Cooper, or her proper representative if Elizabeth Cooper should not be living at the widow's death, *and another two thousand pounds each were given to John Barker and three others, or their representative or representatives.* John Barker having died in the testator's life-time, the question was whether his share lapsed. The Master of Rolls, Lord Alvanley, held that the substitution of the representatives was only intended to meet the case of Barker's pre-decease of, not the testator himself, but his widow, the life tenant, and he decided Barker's legacy to have lapsed.

"As to the legacy of John Barker, I think the question can hardly be raised upon this will, for see the preceding legacy to Elizabeth Cooper; would not that have lapsed if Elizabeth Cooper had died in the life of the testator? Beyond all question it would. It is nothing more than saying it shall go to her representatives if she dies before his wife. As to the others, I am of the opinion it is nothing more than a gift to them at the death of his wife; but it was intended only as a beneficial interest to them, and must as such vest in them before it could be transmissible. The rules upon which the court proceeds are perfectly established. A testator is never to be supposed to mean to give to any but those who shall survive him, unless the intention is perfectly clear. I will not determine now, because it is not necessary, that where a legacy is given to a person or to his representatives, it can mean anything but in case of his death in the life of the testator: *but it is perfectly clear that where the fund is given to one for life, and after the death of that person to several others, and in case of their death to their representatives, there is no reason to presume that it shall not lapse by the death of the legatee in the life-time of the testator. It is impossible without transgressing every rule as to vesting to hold this legacy vested, the legatee not having lived to take the benefit under the testator's will.*"

This case clearly pointing out the distinction founded on a preceding life estate, is recognized by the text writers and by the courts as a fixed authority. Hawkins on Wills, 246; 2 Jarman on Wills, 116, note *h*; Williams on Executors, 9 ed., star page 1075 and notes.

See a careful review *In re. Crawford's Trusts*, 2 Drew, 230, Vice Chan-

cellor Kindersley pointing out the distinction made by the same judge between *Corbyn* v. *French*, where there was a preceding life estate, and *Bridge* v. *Abbott*, 3 Brown's Chancery, 224, where there was no such life estate. See also, *In re. Ware*, 45 Chan. Div. 269–77; *In re. Attorney-General Mahlin*, 2 Phil. 68; *Bone* v. *Cook*, 13 price 332, stating rules of construction.

In making this construction of the will I have not overlooked the words "equally divided," but they referred to a distribution *per stirpes*, and not *per capita*, and it is to be observed that these words are not a direction to equally divide between the legal representatives as in *Smith* v. *Palmer*, 7 Hare, 225, where testator gave to plaintiff, if then living, or if he should then be dead to his legal representative or representatives, if more than one, *share and share alike*. Thus indicating that he used the words "legal representatives" in a different sense than the ordinary one of executors or administrators. See effect of like modifying words, and also of the statute.in *Rivenett* v. *Bourquin*, 53 Mich. 10.

It was held as to *real estate* in *Bolton* v. *Bank*, 50 Ohio St. 220–293, that a devise to a trustee to pay a fixed rental income to the testator's wife  *  * balance of net rents to his children *or their heirs*, and on the death of the wife to convey to his children *or their heirs*, gave the children a vested interest on the testator's death. That the words "or their heirs" do not make the estate a contingent remainder, and are words of limitation, and not of substitution, and do not bring in a new class of beneficiaries to take as purchasers of the testator. See also *Lincoln* v. *Laycock*, 33 Ohio St. 128; *Brashear* v. *March*, 15 Ohio St. 103.

My conclusion is thus reached as to the legacy (the Sixth Item) to Maria Mills Norwood, one of testator's children, without considering whether the legacy was *altogether lapsed as to all beneficiaries* by reason of the death of the widow in his lifetime.

The view I have taken in the construction of this Item of the will is founded on *Corbyn* v. *French*. I see no alternative from determining that this legacy has lapsed, and that Mr. Norwood did not take as a substitute for his wife.

At first I was inclined to think that *Brokaw* v. *Hudson, Executor*, disregarded the rule of *Corbyn* v. *French*, but on a more careful study of those two cases and many others which seemed to run in the lines of either of them, I became convinced that the preceding life estate is the true ground of distinction. I do not find *Corbyn* v. *French* discredited .by any authority, but on the contrary is cited numerously with approval.

To whom did the testator intend to give the residue of his estate by the Seventh Item of his will? He says, "I direct that the rest and residue of my estate, real, personal and mixed, shall pass to and vest in Charles L. Mills in trust for the following purposes: *Said trustee shall hold said estate for the equal benefit of my four children and their legal representatives.*"

In the first place, I think we must not regard him as speaking of a class, as claimed by counsel for defendant, but as if he had named each child, for he says, "my four children." It is alleged in the petition, and it is presumed he well knew their names, and his words mean the same as if he had said: "For the equal benefit of my four children, Charles, Maria, Martha and Emma, and their legal representatives." Or as to the share in controversy as if he had directed the said trustee to hold the undivided one-fourth of said estate for the benefit of his daughter *Maria and her legal representatives*.

See the reasoning in the opinion of Judge Minshall in *Woolley* v. *Paxson*, 46 Ohio St. 312; *In re Porter's trusts*, L. R., 8 Eq. 52.

It is quite clear that the will vests the trustee with real as well as personal estate, and that the testator intended his children, upon his death, to

be vested with an equitable title therein, and while giving the trustee large discretionary powers to sell and re-invest in mortgage securities, and ground rents (real estate), it does not direct him to sell or convert the estate into personalty.

True, the trustee is directed to pay $5,000.00 to each daughter when married, and is authorized in his discretion to make further distributions and payments, and to pay the income from the estate investments to the children semi-annually, but it is clear there was sufficient personalty with which to make such payments. The trustee is to hold this real and personal estate subject to his power of sale and re-investment, during the lives of all testator's children, unless he shall sooner distribute.

There is no direction to, and no duty resting on the trustee to convert all the estate into personality, and therefore, as before stated, the equitable title vesting in the children, is realty as well as personalty.

As to the part of this residue considered as realty, there is no room to question the intent by the use of the words, "their (or her) legal representatives" to have been by way of limitation; and as to the part or all of the residue considered as personalty, without any other words to indicate a secondary meaning, following as they do the conjunction "and" (and not "or"); then again, they are words of limitation, and present, "the common case of a gift to A and his executors or administrators, or to A and his legal representatives, which will beyond all question vest the absolute interest in A." 2 Jarman on Wills 115 ; *Appleton* v. *Rowley*, L. R. 8 Eq. 139. "The words 'executors or administrators,' and 'legal representatives,' are terms quite naturally used as mere words of limitation. For in the common case of a gift to 'A and his executors or administrators,' or to 'A and his legal representatives,' A takes the absolute interest, being manifestly the only object of the testator's bounty." Schouler on Wills, section 544.

"A bequest to A, his executors or administrators, is not substitutional, but lapses by his death, although the gift be immediate." *Stewart* v. *Davenport*, I. P. Wms. 83 ; *Holsey, Exec.* v. *Patterson*, 37 N. J. Eq. 448.

Nor do I see any authority for me, from any words used by the testator in his will, to substitute "or" for "and," and seek thereby to change the ordinary meaning of the words, "legal represesentative," as the testator has himself used them. Nor does the use of these words in Item Sixth modify the primary meaning here intended. On the contrary, such use but indicates the intention which I have here given to these words in Item Seventh.

It is a correct rule, as claimed by counsel for plaintiff, that the court should look to the use and meaning given to the same words in other portions of the will, and the case of *Hawn et al.* v. *Banks et al.*, 4 Edwards, Ch. 666, is a distinct illustration.

There testatrix gave to her "niece Mary Phelan and her heirs" six thousand dollars, and three other like-worded legacies were given to collateral heirs, one of which was given to "M. and her heirs (except her daughter E.)" This exception by the testatrix clearly indicated that she gave a different meaning to the words "and to her heirs" than their primary one ; that she intended the other children or next of kin of M. to take substitutionally ; and having used the words in such sense in this paragraph, it was a reasonable presumption that she intended the same sense in the use of the same words in the other paragraphs in disposing of like legacies to relatives of like degree. In that case her intention was marked and clearly pointed out to the court by her qualifying words.

Except for the qualifying words, the court would have construed "and to her heirs" according to the common rule as words of limitation.

Likewise we find in *Brent* v. *Washington*, 18 Cratt. 526, the testator modified the primary meaning of the words "and their legal representatives"

by adding the words "according to the statute of distribution," thereby indicating that he intended them in their secondary sense.

In *Walker* v. *Marquis of Camden*, 16 Sim. 329, the words "executors or administrators" were used in other parts of the will in their secondary sense.

After a careful consideration of the entire context of the will in the light of all the authorities considered, many of which not here cited, I am quite firmly founded in the opinion that the court is not authorized to give to these words in controversy any other than their primary, ordinary, legal sense as words of limitation. And, therefore, as his daughter Maria died during his life, the absolute gift to her lapsed, and plaintiff does not take any interest in his father-in-law's estate by this Seventh Item of the will.

It is claimed that the court ought not to arrive at this construction of the will for that it would be unreasonable to assume that the testator, had Maria Norwood died leaving children, intended to deprive them from taking her share. But our legislature in recognition of this rule of construction, has expressly provided that such a legacy shall not lapse as to the *issue* of a legatee of his blood who died during testator's life. Section 5971 provides:

"When a devise of real or personal estate is made to any child or other relative of the testator, if such child or other relative shall have been dead at the time of the making of the will, or shall die thereafter, leaving issue surviving the testator, in either case such issue shall take the estate devised in the same manner as the devisee would have done if he had survived the testator; or, if such devisee shall leave no such issue, and the devise of a residuary estate to him or her, and other child or relative of the testator, the estate devised shall pass to, and vest in such residuary devisee surviving the testator, unless a different disposition shall be made or required by the will."

It is to be assumed that the testator knew the law in this regard, and was using words of devise and bequest in his will with this provision in his mind.

Had Maria Mills Norwood left issue, such issue would have taken by virtue of this statute the share which she would have taken had she survived the testator; but it is to be observed that her husband, William Norwood, is not her issue, and can not take by this statute.

The demurrer to the petition will therefore be sustained.

*Elliott H. Pendleton*, for plaintiff.

*Ramsey, Maxwell & Ramsey*, for defendants.