*In re* HURD'S ESTATE.

FALSKE *v.* STIMPSON.

1. WILLS—TRUST—DEATH OF REMAINDERMAN BEFORE HOLDER OF
   LIFE INTEREST.
      Under will bequeathing life interest in trust estate to nephew
      and remainder to nephew's four named sons and in case any
      son should predecease the nephew and leave children, such
      children should take by right of representation, where no
      class gift to nephew's four sons was indicated and one son
      predeceased testator, such son's child survived testator but
      predeceased the nephew upon whose death trust was to be
      distributed, the share which had vested in such son's child
      became distributable to the child's mother by right of in-
      heritance upon the nephew's death (3 Comp. Laws 1929,
      § 15726).

2. SAME—CLASS GIFT—INTENT—EVIDENCE.
      That testator under will drawn by a well-skilled draftsman did
      not intend a class gift to four sons of holder of life interest
      was evidenced by fact that in case any of them predeceased
      their father, the life tenant, then upon termination of trust
      the share of such son should go to his children by right of
      representation, by lack of provision for survivorship as be-
      tween the four remaindermen or other provision for divesti-
      ture of title and by disposal of residue directing that children
      of nephews and niece to whom he had left residue should take
      their parent's share by right of representation in case a
      parent predeceased testator.

3. TRUSTS—REMAINDERMEN—VESTING OF INTEREST.
      In the absence of trust provision to the contrary, title vests in
      heirs of a named remainderman who predeceases life tenant.

4. WILLS—CONSTRUCTION—VESTING OF ESTATES.
      In construing wills, vested estates are to be preferred to con-
      tingent ones.

---

That no requirement of survival is implied with respect to a sup-
planting limitation to the children of the first taker, such as is
involved here, see 3 Restatement, Property, § 254, and comment d.

Effect of direction to divide and pay over at a future time, see
3 Restatement, Property, § 260.

In general, as to construction of limitations with respect to a re-
quirement of survival, see 3 Restatement, Property, chap. 19.

Preference for early vesting in construing an interest, see 3 Re-
statement, Property, § 243, comment i.

What constitutes a class gift, see 3 Restatement, Property, intro-
ductory note to topic 1 of chapter 22, and § 279.

5. SAME—INTENT—VESTING OF ESTATES.
   .A will operates from the death of the testator and unless a contrary intention appears, estates vest at that time.

6. SAME—CONSTRUCTION—VESTING OF ESTATES.
   Where the construction of a will is necessary, the law favors the vesting of estates at the earliest possible moment.

7. SAME—GIFT—DISTRIBUTION IN FUTURE.
   A gift to pay and distribute *in futuro* wherein the distribution is not deferred for reasons personal to the legatee but merely to permit testator to let in a life interest to another, vests upon death of testator, the right of enjoyment only being deferred.

8. REMAINDERS—TRUSTS—ADVANCEMENT WITHOUT CONSENT OF RE-MAINDERMAN'S HEIR.
   Under testamentary trust wherein life interest was left to testator's nephew and remainder to nephew's four named sons with children of sons to take by right of representation in case a son predeceased nephew, where a nephew's son predeceased testator and nephew, son's child survived testator but predeceased nephew, and child's mother was not notified of an advancement to the nephew consented to by the other three remaindermen, such order was not binding upon her and she was entitled to be saved from loss by deducting her share from distribution to other remaindermen.

Appeal from Monroe; Golden (Clayton C.), J. Submitted October 7, 1942. (Docket No. 15, Calendar No. 42,036.) Decided November 25, 1942.

In the matter of the estate of George W. Hurd, deceased. The Union Guardian Trust Company, trustee, petitioned probate court for construction of the will. Florence Falske petitioned probate court praying for assignment on an interest in the trust set up under the will. From an order of the probate court granting Florence Falske's petition, defendants Stimpson appealed to circuit court. Judgment for defendants. Plaintiff appeals. Reversed.

*Oliver J. Golden* (*Thomas E. Griffin,* of counsel), for plaintiff.

*Prescott, Coulter & Baxter,* and *Robert N. Sawyer* (*Charles F. Clarke, Jr.,* of counsel), for defendants.

North, J. George W. Hurd died testate July 9, 1929. A contest as to the construction of his will was appealed from the probate court of Monroe county to the circuit court; and from the construction adjudicated in the circuit court plaintiff has brought this appeal.

After making nine bequests in specific amounts, the testator provided in the third paragraph of his will as follows:

" Third: I give and bequeath to the Union Trust Company of Detroit, Michigan, the sum of $25,000 in trust however. I direct my said trustee to pay the net income from said trust fund to my nephew, George Stimpson, for the period of his natural life. Upon his death the trust shall terminate and I direct my said trustee to pay over the said trust funds in equal shares to Grant, Carl, Earl, and Reed Stimpson, the children of the said George Stimpson; and should any of the four above-named sons of George Stimpson predecease him, leaving children, then upon the termination of this trust the share of such deceased son shall be turned over to his children by right of representation."

Carl Stimpson died in August, 1926, leaving as his only child a son born in 1922. This son, Jack Stimpson, died intestate on July 11, 1933. So it appears Carl's death was prior to that of the testator, but Jack's death occurred after that of the testator. Plaintiff and appellant is the mother of Jack and as such claims she, by right of inheritance, became entitled to one-fourth of the corpus of the trust upon its termination, *i. e.,* at the death of the life beneficiary, George Stimpson. His death did not occur until April 10, 1941; and on that date the trust terminated. The death of George Stimpson did not

occur until after the death of plaintiff's son, Jack Stimpson. Decision herein hinges on whether, under the circumstances presented by this record, Jack, on the death of the testator, took an indestructible or absolute title to one-fourth interest in the corpus of the trust which would have gone to Jack's father, Carl Stimpson, had he been alive when the trust terminated.

In considering the controverted portion of the will the circuit judge found, as appellees contend, that "it was the intention of the testator to create a class gift;" and notwithstanding he was of the opinion that upon the death of Carl Stimpson and the death of testator title to one-fourth of the trust estate vested in Carl's son, Jack, still the circuit judge held that this vested title "was subject to divestment and it did divest" upon the happening of Jack's death prior to that of the life beneficiary, George Stimpson. Accordingly the circuit judge held that the trust estate upon the termination of the trust went to the three surviving remaindermen named in the quoted portion of the will. Under such holding the mother of Jack, plaintiff herein, would take nothing. As noted above, she has appealed.

We are unable to agree with the circuit judge that construction of the will as a whole brings the conclusion that the testator intended to make a class bequest to the four remaindermen named in the third paragraph of the will. Instead the testator expressly provided that in event any one of the four remaindermen predeceased their father, who was the life beneficiary, then upon the termination of the trust the share of such remainderman should go to his children by right of representation. When the testator died title to the one-fourth originally bequeathed to Carl who had previously died vested in Carl's son, Jack. There was no provision in this

will for survivorship as between the four remaindermen, nor was there any condition or provision in the will by which such title was or could be divested. It was subject only to the life interest of Jack's grandfather, George Stimpson. The fact that the grandfather outlived Jack did not divest the latter's title; and upon Jack's death his share in the trust estate passed to his mother by right of inheritance. *

The conclusion that the testator did not intend a class gift or bequest is not only indicated by the fact that his will contained no provision for a contingent defeasance of title to any of the respective bequests in paragraph three of the will; but also by the fact that in the next paragraph of his will the testator left the residue of his estate in equal shares to his wife and named nephews and a niece, and provided: "and should my nephews or niece named in this paragraph predecease me, leaving children, then I direct that such children shall take their parents' share of the said residue by right of representation."

It is a fair inference from the will itself that it was drawn by some one who was at least fairly well skilled in drafting such instruments; and since in very simple and concise language provision might have been definitely made for a class bequest of the remaindermen's interest in the trust estate, had the testator so intended, the absence of any such provision in the will is indicative that the testator did not so intend. Such a provision was made in the will before us in *L'Etourneau v. Henquenet,* 89 Mich. 428 (28 Am. St. Rep. 310), and was a ground of decision therein.

Appellees place much stress on the following portion of paragraph three of the will: "*upon the ter-*

---

* 3 Comp. Laws 1929, § 15726 (Stat. Ann. § 27.2891).—REPORTER.

*mination* of this trust the share of such deceased son shall be turned over to his children by right of representation.'' The contention is that since the share of each of those who were to take as remaindermen was not to be paid over or ''turned over'' except upon the termination of the trust, title to the respective shares did not irrevocably vest until the termination of the trust, *i. e.,* until the death of the life beneficiary, and in event of a remainderman's death prior to that of the life beneficiary title of the former was thereby divested. This contention is not in accord with the law of this State as announced in former decisions of this court. In numerous cases we have held that notwithstanding the remainderman predeceased the life beneficiary, nonetheless the remainderman had a vested estate.

''The possibility of the death of the remaindermen in advance of plaintiff (life tenant) does not prevent them from taking that which in law is a vested remainder.'' *Holmes* v. *Holmes,* 215 Mich. 112.

*In re Patterson's Estate,* 227 Mich. 486, the testator's will contained the following provision:

''To my beloved wife, Nancy A. Patterson, * * * for her life time, and at her decease the remainder over unto the surviving children, the issue of myself and my said wife, Nancy A. Patterson, share and share alike.''

In the above case two children survived the testator, but both of them died before the death of the life tenant, as did Jack in the instant case. The question decided was whether the remainder over after the termination of the life estate vested on the death of the testator or not until the death of the life tenant. It was held that title vested on the death of the testator, notwithstanding those to

whom the remainder was to go died prior to the termination of the life estate. In support of its conclusion in the *Patterson Case, supra,* the court cited *Rood* v. *Hovey,* 50 Mich. 395, and *Porter* v. *Porter,* 50 Mich. 456. In the *Rood Case* (p. 399), the following pertinent statement of law is made:

"There can be no doubt that the policy of our statutes is to favor vested estates in preference to contingent, and that estates given to particular devisees shall always go to their heirs, unless a different purpose is apparent.   *   *   *
" It is also well settled that, unless an intention appears to the contrary, the will shall operate from the death of the testator, and estates vest at that time."

" Where the construction of a will is necessary, the law favors the vesting of estates at the earliest possible moment." *Lambertson* v. *Case* (syllabus), 245 Mich. 208.

"The will provided that one of said legacies should be paid to the legatee in one year after the death of the testator and his wife. The legatee survived her father, but not her mother. And it is held that the legacy did not lapse, but became vested in the legatee upon the death of the testator, and descended to her heirs." *Hibler* v. *Hibler* (syllabus), 104 Mich. 274.

"Bequest of entire estate to named children of two of testator's nephews subject to use in nephews of property bequeathed to their respective children until respective youngest child should come of age gave children vested, not contingent, remainders, notwithstanding possible death of a child before reaching possession." *Rody* v. *Stotz* (syllabus), 280 Mich. 90.

Appellees also rely upon and stress their right to prevail in this case on the theory of the so-called

"divide and pay over" rule. We are not in accord with this contention but are of the opinion that under the facts in this case appellees cannot prevail under the "divide and pay over" rule or theory. Because it is so pertinent and decisive of the instant case, we quote somewhat at length from a decision of the supreme court of New Jersey:

"The only words of gift to the five named as 'equitable remaindermen' are in the direction to *pay and divide*. Ordinarily the vesting of such gift would not take place until the arrival of the time for distribution, but where the time of payment is postponed only for the purpose of letting in a life interest, the remainder interests vest immediately on the death of the testator. (Citing numerous cases.) \* . \* \*

"This is precisely the situation in the case at bar. The distribution to the ultimate beneficiaries is postponed to a time subsequent to the death of the testator, only for the purpose of letting in the intermediate estate. \* \* \* It is the typical case of a remainder after a life estate, and subject to no uncertainty except the precise time of the certain termination of the preceding life estate.

"Although the remaindermen in fact constitute a class, yet the gift is to them by their respective names, and with the further qualifying clause 'in equal shares.' There can be no doubt, therefore, that the gift is in severalty and not as joint tenants. (Citing cases.)

"All five remaindermen survived testatrix, and each of them therefore became immediately vested of an undivided one-fifth share in the equitable remainder." *Redmond* v. *Gummere,* 94 N. J. Eq. 216 (119 Atl. 631).

Another decision of like character will be found in *Carter* v. *Carter,* 234 Ill. 507 (85 N. E. 292). In this case the court said:

" 'Though a gift arises wholly out of directions to pay or distribute *in futuro*, yet if such payment or distribution is not deferred for reasons personal to the legatee, but merely because the testator desired to appropriate the subject matter of the legacy to the use and benefit of another for and during the life of such other, the vesting of the gift in remainder will not be postponed but will vest at once (on the death of the testator), the right of enjoyment only being deferred.' "

Our conclusion is that the will in the instant case did not contain a class gift; but instead upon the testator's death Jack Stimpson took an absolute title to one-fourth of the trust estate subject only to the life estate therein of his grandfather, George Stimpson; and that appellant by right of inheritance took the share of her son Jack upon his death.

This appeal presents another matter which is quite in the nature of a corollary to the main controversy. During the administration of the trust created by the quoted paragraph three of the will, $1,000 out of the corpus of the trust was "advanced" or paid by the trustee to the life beneficiary. This was done with the consent of the three remaindermen other than Carl Stimpson and under an order of the probate court made August 3, 1933, but subsequent to the death of Jack Stimpson. No notice of entering such order was given to plaintiff herein. She was in no way a party to this disposition of a part of the trust fund. She is not bound by the order of the probate court. She had a one-fourth interest in the one thousand dollars paid out of the trust fund. It follows that to the amount of $250 plaintiff must be saved from loss by deducting that amount proportionately from the shares of the respective remaindermen who consented to such payment to the life beneficiary, this

to be done incident to the distribution of the trust fund.

The order of the circuit court construing the controverted provision of the will of George W. Hurd, deceased, is reversed; and an order will be entered in the circuit court affirming the construction given to the third paragraph of the will by the probate court, such construction being in accord herewith; and the cause will be remanded to the probate court for further proceeding therein. Appellant will have costs both in this court and the circuit court.

CHANDLER, C. J., and BOYLES, STARR, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.